Robert G. McADAMS,
Plaintiff-Appellant,

v.

MATAGORDA COUNTY APPRAISAL DISTRICT, et al.,
Defendants-Appellees.

No. 85–2424.

United States Court of Appeals,
Fifth Circuit.

Sept. 2, 1986.

James F. Tyson, Larry Watts, Watts & Co., Houston, Tex., for plaintiff-appellant.

Carla Cotropia, Mills, Shirley, McMicken & Eckel, Galveston, Tex., for defendants-appellees.

Before GEE, POLITZ, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Robert G. McAdams (McAdams), who was terminated in his job as chief appraiser for appellee Matagorda County Appraisal District (MCAD) of Matagorda County, Texas, brought this action under 42 U.S.C. § 1983 against appellees MCAD and several members of its Board of Directors. McAdams received a favorable jury verdict on his claim that he was fired for the exercise of speech protected by the First Amendment. The district court granted a judgment notwithstanding the verdict for appellees, finding that there was insufficient evidence that McAdams was terminated for any constitutionally protected speech. McAdams appeals, seeking reinstatement of the jury verdict. We agree with the district court, and thus affirm the judgment.

### Facts and Proceedings Below

The Texas Tax Code, enacted in 1979, authorizes the establishment of appraisal districts within each county to centralize responsibility for appraising all real and personal property within each district for various ad valorem tax purposes. Tex. Tax Code Ann. §§ 6.01 *et seq.* (Vernon 1982). The Tax Code provides for a board of directors in each appraisal district, which is responsible for establishing an appraisal office, appointing a chief appraiser, appointing an appraisal review board, and other duties. The board of directors has no authority over property valuation. The chief appraiser is to be the chief administrator of the appraisal office. The Tax Code provides that the chief appraiser "is appointed by and serves at the pleasure of the appraisal district board of directors." *Id.* § 6.05(c). The appraisal review board is authorized to review appraisals and to revise individual appraisals and order blanket reappraisals.

When the MCAD was first established in 1979, the five initial members of the Board of Directors (the Board) were appointed by the various taxing units within the county (*e.g.*, school districts, water districts). The Board hired McAdams in July 1980 as a part-time consultant. In January 1981, McAdams became the full-time chief appraiser of the MCAD.[1] Tension soon developed between McAdams and the Board over several issues. After McAdams' appointment, the Board contracted with an accounting firm, Associated Tax Services (ATS), for appraisal of all the property within the MCAD. During the appraisal process in April and May 1982 when some preliminary valuations became available, various Board members expressed concern that personal property appraisals were too high and needed to be lowered.[2] One member requested that the personal property appraisals be reworked; others asked McAdams to perform spot checks on ATS. McAdams refused to check the accuracy of ATS' work. McAdams told Board members that they had exceeded their legal authority under the Tax Code and that their private discussions violated the Texas Open Records Act. During the Board's May 1982 meeting, which was open to the public, a Board member expressed concern that property values were too high. McAdams thereupon responded that it was not the Board's function to value the property. During the September 1982 meeting, also open to the public, a Board member moved to terminate McAdams as chief appraiser of the MCAD. McAdams was permitted to make a lengthy statement concerning the difficulties he had encountered as chief appraiser. The Board then voted to terminate McAdams' employment.

McAdams filed this action under 42 U.S.C. § 1983 against the MCAD and the members of its Board of Directors, alleging that they violated his First Amendment rights and his right to procedural due process. McAdams asserted that he was fired in retaliation for his constitutionally protected statements made to the Board members that they had exceeded their legal authority. The district court granted partial summary judgment for the defendants, dismissing McAdams' due process claim. McAdams makes no complaint of that ruling on this appeal. With respect to the First Amendment claim, the district court determined that, because the record then before it did not reveal the context of plaintiff's statements, summary judgment was not appropriate. A jury trial was thus subsequently held on the First Amendment claim. After plaintiff's evidence and again after all the evidence, defendants moved for a directed verdict, asserting that McAdams had not established that he was terminated for constitutionally protected speech. The district court denied both of defendants' motions for directed verdict and submitted the case to the jury, which returned a verdict for plaintiff. The jury found that McAdams' exercise of protected activities was a substantial or motivating factor in the termination of his employment, and that the Board would not have fired McAdams in the absence of his protected activities. However, the district court granted defendants' motion for judgment notwithstanding the verdict, determining that there was insufficient evidence that McAdams was terminated for any constitutionally protected speech, and entered final judgment for defendants.

**1.** McAdams signed a one-year written contract with the Board to serve as chief appraiser for 1981. The nature of his relationship during 1982 is disputed. He alleged that he had an oral, one-year employment that referred to the 1981 written contract, while Board members testified that he was hired for 1982 on a month-to-month basis and was expected to resign at the completion of the appraisal hearing or the approval of the tax roll. The Appraisal Review Board conducted appraisal hearings in June and July 1982; the tax roll was certified in October 1982. During his employment in 1982, McAdams received the same salary and benefits that he received in 1981.

**2.** There was substantial evidence that the appraisal of all the property was too high. After the private firm completed the appraisal, the Appraisal Review Board reduced *all* values across-the-board by twenty percent.

## Discussion

 McAdams appeals the district court's adverse determination of his First Amendment claim. To recover under the First Amendment, McAdams must establish (1) that his statements to the Board were constitutionally protected and (2) that these protected statements were substantial or motivating factors in the Board's decision to terminate his employment. To rebut McAdams' case, the Board must show that it would have terminated his employment in the absence of the statements. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977); *Bickel v. Burkhart,* 632 F.2d 1251, 1255 (5th Cir.1980). As McAdams acknowledges, the question whether his speech was constitutionally protected is an issue of law. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983).[3] This determination involves "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 1690; *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Whether the employee's speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 103 S.Ct. at 1690.

The district court observed that the Board members had "discussed the valuation of a generic class of property, and [had] requested that plaintiff reconsider it." Yet, the court found that the evidence established that the Board had not directed McAdams to change the property value on any specific piece of property, and there was no sufficient evidence to support a contrary finding. The district court further noted that Board members visited McAdams and attended Appraisal Review Board hearings, and that McAdams informed the defendant Board members that he objected to their interference. These occasions often resulted in tension between the Board and its members and McAdams. The district court determined that the evidence established, without sufficient basis for a contrary finding, that "[p]laintiff was fired for demanding the freedom to do his job the way he felt it ought to be done. Plaintiff would have been fired for failing to comply with defendants' wishes *whether or not he vocally made known his objection.*" (Emphasis added.) It held that "a discharge for such reason does not implicate a First Amendment right." The district court concluded that the *Pickering* balance in this instance favors the government's interest in the efficient performance of its functions over any speech interest that McAdams may have had in his refusal to comply with the Board's instructions.

McAdams argues that he was fired for the statements made to the Board members and that the district court invaded the province of the jury in finding that he would have been fired in the absence of the statements. McAdams also challenges the district court's characterization of the facts. His main contention is that the court incorrectly found that he was not a "whistle blower," because his statements were aimed at exposing abuse of authority by

**3.** We have recently addressed the appellate court's task of deciding whether a public employee's speech is constitutionally protected:

"[W]hen what was said and its context are undisputed, the constitutional 'status' of the speech is to be independently examined by an appellate court. When what was said, but not its context, is disputed, the choice belongs to the trier of fact; on appeal, the determination of what was said is subject to review by the clearly erroneous standard, and the constitutional 'status' of the statement is given independent review. Yet, when a factual dispute centers not on what was said but on its context, the deference due a trial court's findings becomes less certain: factual conclusions about the speaker's intent, audience effect, and other elements of context are not so easily disentangled from a decision as to whether a statement was 'political' or directed at 'public concerns.'" *McPherson v. Rankin,* 786 F.2d 1233, 1237 (5th Cir.1986).

*See also Brown v. Bullard Independent School District,* 640 F.2d 651, 653 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981).

publicly elected officials. McAdams urges that the Board attempted to force him to commit illegal acts and that Board Chairman Thomas Holsworth had told him that he would be asked to resign if the property value appraisals were not lowered.[4]

■ We agree with the district court that the record establishes that McAdams was not fired for voicing his specific criticisms of the Board, but because he refused to comply with the Board's requests. Viewing all the evidence and its inferences in the light most favorable to McAdams, we find that reasonable minds could not conclude that McAdams was fired because he voiced his objections or because of the substantive content of his statements. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc). To the extent making the statements may have contributed to his firing, it was because of the personally hostile and rude manner in which he responded to the Board members, which is not conduct protected by the First Amendment. Both sides presented evidence that the working relationship between McAdams and the Board had been deteriorating several months before McAdams' statements in April and May 1982 concerning the Board's authority. Board members testified that in December 1981, when they decided not to give McAdams a new written contract or the pay increase he sought, they communicated to him their dissatisfaction with his handling of the public relations aspect of his position. In addition, several members were upset that McAdams spent a substantial amount of time in the spring of 1982 on outside work that he performed part-time under a contract with the State of Texas. Although Board Chairman Holsworth initially gave McAdams permission to do outside work that did not interfere with his duties as chief appraiser, the Board eventually requested that he no longer continue the outside work as the critical phase of the MCAD appraisal approached. Nevertheless, McAdams continued to work for the state and Board members felt that it interfered with his job. Another controversy involved reimbursements that McAdams received from the MCAD for travel expenses he incurred on a trip that involved state contract work and MCAD work. After the Board questioned the reimbursements, McAdams returned the money to the MCAD. It is evident that McAdams' negative responses to the Board members during the appraisal process prompted his discharge because he failed and refused to honor their requests and because of the rude and hostile manner in which he communicated with the Board members, and not because he gave voice to his concerns about the Board's attitude to appraisals or attempted to expose public official misconduct.

Although McAdams' criticisms of the Board members may have addressed matters of public importance, there is no evidence that he attempted to or did communicate his concerns to anyone but the Board members. There is no evidence that anyone other than the Board members attended the May public meeting, or that McAdams made any other statements that could be characterized as public.[5] McAdams' private statements to the Board members may be protected by the First Amendment, of course, *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979), but they do not indicate that McAdams was a "whistle blower." We believe that the context here establishes that McAdams' statements addressed a personal dispute with his employers and not matters of public concern. *See Connick*, 103 S.Ct. at 1690; *Davis v. West Community Hospital*, 755 F.2d 455, 461–62 (5th Cir.1985). If McAdams' response to the Board's requests was a substantial, motivating factor in the Board's decision to fire him, it was, as far as this record reflects, only so in the sense that he was fired for refusing to cooperate with or follow the biddings of his employers and for the personally offensive

---

4. Holsworth testified to the contrary.

5. The evidence will not support a finding that McAdams was discharged because of his noted statements at the September 1982 meeting.

manner in which he chose to communicate with the Board members, and not for the substantive content of the statements he made.

■ We therefore must assess whether McAdams had any constitutionally protected interest in his refusal to conduct the inquiries into the personal property appraisals as requested by the Board. In weighing McAdams' interest in this activity with the government's interest in effective and efficient fulfillment of its duties, we note that the government's interest in justifying a particular burden "varies depending upon the nature of the employer's expression." *Connick,* 103 S.Ct. at 1692. Thus, the Supreme Court observed.

"When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." (Footnote omitted.)

The record reflects that McAdams' confrontation of his superiors substantially interfered with his ability to work with the Board in carrying out the work of the appraisal district. McAdams' challenges to the Board's authority occurred during a critical time in the performance of the MCAD's primary responsibility—a comprehensive, uniform appraisal of all property in the district. Cooperation among the Board of Directors, the Appraisal Review Board, and the chief appraiser was an important aspect of the successful completion of the appraisal. The difficulty of the MCAD's task underscored the need for good relations between the appraisal office and the MCAD's various taxing entities and citizens. There was extensive evidence that McAdams' refusal to cooperate with the Board disrupted the effective functioning of the MCAD. Whether or not McAdams had good reasons to challenge the Board's use of its authority, his conduct was not protected by the First Amendment.

The Eleventh Circuit addressed a similar First Amendment claim in *Berry v. Bailey,* 726 F.2d 670 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985). In that case, a deputy sheriff was discharged because he refused to follow the instructions of his superior, the county sheriff, to drop the charges pending against the daughter of one of the sheriff's political supporters. The deputy sheriff asserted that he had a constitutionally protected speech right to disobey the sheriff's instructions. The Eleventh Circuit observed that the Supreme Court in *Connick* "did not indicate whether an express or implied refusal to perform a task requested by one's employer is speech to which no constitutional right attaches, or whether it is speech that, while protected, is per se outweighed by the government's interest." *Id.* at 676. The Eleventh Circuit concluded that, whichever category was appropriate for the deputy sheriff's conduct, it was not protected under the *Pickering* analysis. *Id.* Because plaintiff's statements took place on the job and concerned official duties, they implicated the government's interest in harmony "in the day-to-day close working relationships with immediate superiors necessary for efficient office functioning." *Id.* Although McAdams may have had more independence in his job than the deputy sheriff in *Berry,* that is not a controlling distinction, as under the statute the Board here was the governing body of the MCAD and McAdams was its chief executive, selected by and to serve at the pleasure of the Board.

McAdams relies on *Gonzalez v. Benavides,* 774 F.2d 1295 (5th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986), which involved a dispute between Gonzalez, the executive director of a county agency, and the county commissioners who created the agency and hired Gonzalez. After Gonzalez discharged the agency's deputy director, the commissioners reinstated the deputy director, publicly reprimanded Gonzalez, and began an investigation of Gonzalez's job performance. Gonzalez stated publicly that the

investigation violated the agency regulations. The commissioners then "demanded that Gonzalez publicly acknowledge their authority to evaluate his performance. Gonzalez refused, and the commissioners fired him." *Id.* 106 S.Ct. at 1298 (footnote omitted).

We applied the balancing scheme of *Pickering* and *Connick* to determine whether Gonzalez's speech was constitutionally protected. Finding that his speech raised issues of public concern, we considered the government's interest in Gonzalez's loyalty. We noted that, even without a close working relationship with elected officials, a senior executive employee might be required to limit his speech. *Id.* at 1301. We concluded, however, that the commissioners had not demonstrated that Gonzalez's speech was likely to disrupt their operations. *Id.* at 1302. The commissioners offered no evidence that the speech was likely to undermine their political program *or* that Gonzalez refused to abide by the reinstatement decision despite his refusal to publicly acknowledge their authority. *Id.* We also stated that there was nothing about the time, place, or manner of Gonzalez's statement to justify his discharge, because he had been polite and had not launched personal attacks on the commissioners. *Id.* at 1303.

We disagree with McAdams' contention that *Gonzalez* dictates reversal in this case. As we remarked in *Gonzalez*, the variety of circumstances in this area necessitates balancing each claim on a case-by-case basis. *Id.* at 1303. First, Gonzalez's speech rights were more clearly implicated than McAdams': the commissioners required more than Gonzalez's operational acquiescence in their decision to reinstate the deputy director, they "required Gonzalez to accept their view" *in a public acknowledgement. Id.* at 1298 n. 6. Gonzalez was, in essence, required to personally, publicly avow as his own belief a matter he did not believe in. *Cf. Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). Nothing of the kind is involved here. McAdams was terminated not for refusing to say anything, nor for the content of what he said (as opposed to the personal rudeness of the manner in which he dealt with Board members), but rather for his actual refusal to *operationally* cooperate or perform. That McAdams may or may not have been correct, for reasons unrelated to the First Amendment, in refusing to cooperate or perform is not the issue. The issue is whether a governmental employee may transform a refusal to operationally cooperate in employer-assigned functions, the performance or non-performance of which cooperation has itself no First Amendment relevance, into a First Amendment right by verbalizing his refusal. We decline to recognize any such metamorphosis. Second, unlike the *Gonzalez* case, defendants here have presented substantial, compelling evidence that McAdams' conduct disrupted his relationship with the MCAD Board. The time, place, and manner of most of McAdams' statements differed significantly from those in *Gonzalez,* and constituted more of a threat to that relationship. *See Givhan,* 99 S.Ct. at 696 n. 4. Again, who was correct on the substantive issues between McAdams and the Board is not the question. Those substantive issues do not themselves implicate the First Amendment. It is undisputed that by statute the Board was the district's governing body and McAdams its chief executive who was selected by and served at the pleasure of the Board. If the Board in certain particulars overstepped its authority under state law, that does not give McAdams a First Amendment right he would not otherwise have to so offensively comport himself in his personal contacts with the Board members so as to destroy his working relationship with them. In sum, our weighing of the relevant factors in this case necessarily tips the balance in favor of the governmental entity.

■ We agree with the district court that, whether or not McAdams' discharge was proper or fair, he was not discharged for First Amendment protected activity. Therefore, the district court did not err in

granting judgment notwithstanding the verdict for defendants.[6]

## Conclusion

Finding that McAdams was not discharged for the exercise of rights protected by the First Amendment, we affirm the judgment for defendants.

AFFIRMED.

6. McAdams also contends that the district court abused its discretion by granting judgment notwithstanding the verdict after denying defendants' motions for summary judgment and directed verdict. A district court may rule on a motion for judgment notwithstanding the verdict after denying a motion for directed verdict, even at the close of all the evidence, because the court is deemed to have reserved decision on the legal question raised by the directed verdict motion. Fed.R.Civ.P. 50(b); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2522 (1971). The district court's previous denial of defendants' motions does not prevent the court from deciding the legal issue in favor of the defendants when granting final judgment.