25 F.3d 1058
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Sharon PIERCE, Plaintiff-Appellant,
v.
Richard P. HEUCKENDORF, Defendant-Appellee.
 No. 93-6248.
 United States Court of Appeals, Tenth Circuit.
 May 5, 1994.
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Plaintiff-appellant Sharon Pierce appeals the district court's grant of summary judgment in favor of her former employer on her claims that she was terminated in violation of the First Amendment and the public policy of Oklahoma. Because Ms. Pierce failed to show that she was discharged for engaging in protected speech or that her termination violated Oklahoma public policy, we affirm.
 
 
 4
 Ms. Pierce formerly was employed as the executive secretary for the Oklahoma Department of Veterans Affairs (ODVA). Defendant Richard P. Heuckendorf was the director of ODVA when these events occurred. Ms. Pierce's duties as executive secretary included acting as the recording secretary for the War Veterans Commission (Commission) and providing personal assistance to Mr. Heuckendorf.
 
 
 5
 In June 1990, the Commission was experiencing internal tension between some of its members and Mr. Heuckendorf. See generally, Appellant's App. at 82-95. On June 6, 1990, a controversy developed between Mr. Heuckendorf and the chairman of the Commission, Coleman Nolan, regarding the proper procedure for putting an item on the Commission's agenda. Id. at 17-18. Two days later, during the Commission's meeting, Chairman Nolan moved that a special meeting of the Commission be scheduled for Tuesday, June 12, 1990, to discuss the employment status of Mr. Heuckendorf and his deputy director. This motion was approved.
 
 
 6
 The chairman then requested that the deputy director prepare a meeting notice and agenda for filing with the Oklahoma Secretary of State. Because the preparation of such notices and agendas generally fell within the director's responsibilities, Chairman Nolan's request provoked a somewhat heated discussion as to the proper procedure to be followed. Another commissioner, Roy Vier, amended the motion to request that Mr. Heuckendorf arrange for the drafting, approval, and filing of the meeting notice and agenda. This motion was approved unanimously. As recording secretary, Ms. Pierce was present throughout the entire discussion.
 
 
 7
 After the Commission recessed for lunch, Chairman Nolan handed Ms. Pierce a meeting notice and agenda and instructed her to file them with the Secretary of State. When Mr. Heuckendorf later asked Ms. Pierce why she did not contact him before filing the notice and agenda, Ms. Pierce claimed that she was unable to locate him. Id. at 30. Mr. Heuckendorf, however, states that he never left the conference room during lunch that day. Id. at 26.
 
 
 8
 Mr. Heuckendorf considered Ms. Pierce's conduct of disobeying the Commission's vote and not discussing the notice and agenda with him to be disloyal and insubordinate. Mr. Heuckendorf, therefore, removed Ms. Pierce from the position of executive secretary, but offered her another position in lieu of termination. Ms. Pierce refused his offer, and was discharged.
 
 
 9
 Ms. Pierce brought an action against Mr. Heuckendorf alleging that (1) she was terminated for exercising her right to free speech guaranteed by the First and Fourteenth Amendments to the United States Constitution, and (2) her termination violated the public policy of the state of Oklahoma and thus was wrongful under the public policy exception to the at-will employment doctrine. Both parties moved for summary judgment. The district court granted summary judgment in favor of Mr. Heuckendorf, finding that Ms. Pierce failed to show that she engaged in constitutionally protected speech or that her termination contravened public policy. This appeal followed.
 
 
 10
 We review a grant of summary judgment de novo applying the same standards as those used by the district court. Pride v. Does, 997 F.2d 712, 716 (10th Cir.1993). Summary judgment is appropriate when "the pleadings [and] depositions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In First Amendment cases, "an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Melton v. City of Oklahoma City, 879 F.2d 706, 713 (10th Cir.1989)(quotations omitted), reh'g granted in part on other grounds, 928 F.2d 920, cert. denied, 112 S.Ct. 296, 297 (1991).
 
 
 11
 To succeed on her claim that she was discharged for exercising protected speech, Ms. Pierce had the burden of showing that: (1) her speech was on a matter of public concern; (2)her interest in making the statement outweighed the public employer's interest in the effective fulfillment of its responsibilities to the public; and (3) the protected speech was a motivating factor in her discharge. Id. Had Ms. Pierce made this showing, the burden would have shifted to Mr. Heuckendorf to show by a preponderance of the evidence that he would have reached the same decision in the absence of her protected activity. Id. Based on our review of the record, we conclude that Ms. Pierce failed to meet her burden.
 
 
 12
 We question first whether Ms. Pierce even engaged in "speech." A person engages in speech when he or she has "[a]n intent to convey a particularized message ... [and] the likelihood [is] great that the message [will] be understood by those who view[ ]it." Spence v. Washington, 418 U.S. 405, 410-11 (1974). Although the notice and agenda contained words, they were not drafted by Ms. Pierce, and she has never argued that her motivation for filing them was to express a message to the public. Rather, she consistently argues that she was motivated to file the notice and agenda because the chairman instructed her to do so. Appellant's App. at 43-44.
 
 
 13
 Similarly, although conduct can constitute "speech," Ms.Pierce has never claimed that she violated the Commission's vote with the intent to express a message thereby. In the absence of an allegation that Ms. Pierce engaged in expressive conduct, we question whether "speech" is at issue in this case. See, e.g., Michelin v. Jenkins, 704 F.Supp. 1, 5 (D.D.C.1989)(holding that teacher who claimed she was fired for participating on a committee which criticized the school administration did not raise a First Amendment claim in the absence of an allegation that the teacher herself criticized the school); see also Maciariello v. Sumner, 973 F.2d 295, 299 (4th Cir.1992)(holding that officers' investigation of their superior for misconduct was not intended to express a message, and thus was not speech), cert. denied, 113 S.Ct. 1048 (1993).[2]
 
 
 14
 Even assuming that the contents of the notice can be attributed to Ms. Pierce, the undisputed facts show that such speech was not the motivating factor behind her termination. In Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 285-86 (1977), the court developed a "but-for" test of causation to be used in determining whether an employee was punished for protected speech. The employee must first carry the burden of showing that his or her speech "was a 'substantial factor'--or, to put it in other words, that it was a 'motivating factor' " in the employment decision. Id. at 287. Once this burden is met, the employer may escape liability by demonstrating "that it would have reached the same decision ... even in the absence of protected conduct." Id.
 
 
 15
 Here, the record establishes unequivocally that Ms. Pierce's "speech" did not motivate Mr. Heuckendorf's decision to remove her from her position. Rather, Ms. Pierce was terminated for her conduct of disobeying an express mandate by the Commission declaring that Mr. Heuckendorf alone was to be responsible for preparing the notice and agenda. Appellant's App. at 79-81, 98-99. It is undisputed that the information actually communicated in the notice and agenda was irrelevant; Mr. Heuckendorf testified that had he prepared the items there would have been no substantive changes. Id. at 25-26. Thus, the content of the notice and agenda played no part in Mr. Heuckendorf's decision to remove Ms. Pierce from her position.
 
 
 16
 Several courts have distinguished between those employment decisions motivated by an employee's misconduct and those motivated by the employee's exercise of protected speech. For example, in Jurgensen v. Fairfax County, 745 F.2d 868 (4th Cir.1984), an employee released a confidential report about an internal review of a police emergency operation center. Release of the report violated a regulation prohibiting employees from revealing police information. The court rejected the employee's First Amendment claim because the employee could not show that his demotion was motivated by his dissemination of the information in the report. Rather, the undisputed evidence showed that the plaintiff was demoted for his "knowing defiance of a valid departmental regulation." Id. at 883 n. 23. The court concluded that "[t]his is a case where clearly the 'but-for' and the 'motivating' cause of the threatened disciplining of [plaintiff] was not his exercise of the right of free speech but his violation of a valid departmental regulation." Id. at 888.
 
 
 17
 Similarly, in McAdams v. Matagorda County Appraisal Dist., 798 F.2d 842 (5th Cir.1986), an appraiser's employment was terminated after a disagreement with the board of directors for the appraisal district. The board had asked the appraiser to rework certain appraisals and to perform spot-checks on an accounting firm. The appraiser refused, criticizing the board and the way it carried out its duties. The court found, as a matter of law, "that McAdams was not fired for voicing his specific criticisms of the Board, but because he refused to comply with the Board's requests." Id. at 846. See also Smith v. Cleburne County Hosp., 870 F.2d 1375, 1383 (8th Cir.) (holding that criticisms of the hospital did not cause suspension of plaintiff's staff privileges, rather, "it was because the medical staff viewed [plaintiff's] behavior over a period of three to four years as disruptive and argumentative"), cert. denied, 493 U.S. 847 (1989). Because the undisputed evidence shows that Ms. Pierce was terminated for her misconduct, and not her speech, Mr. Heuckendorf was entitled to judgment as a matter of law.
 
 
 18
 Even if we assume that Ms. Pierce's termination was motivated by her exercise of speech, Ms. Pierce has not shown that such speech was "protected." Speech is only protected if it is on a matter of public concern, that is, if it relates to a topic of "political, social, or other concern to the community." Melton, 979 F.2d at 713 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.
 
 
 19
 In analyzing whether speech constitutes a matter of public concern, the focus is on the motive of the speaker "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." Conaway v. Smith, 853 F.2d 789, 796 (10th Cir.1988). What is actually said on a topic must itself be of public concern, it must sufficiently inform the issue as to be helpful to the public. Wilson v. City of Littleton, 732 F.2d 765, 768-69 (10th Cir.1984). In addition, speech is more likely to be found on a matter of public concern when it discloses evidence of corruption, impropriety, or other malfeasance on the part of government officials in the conduct of their official duties. McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir.1989).
 
 
 20
 Here, even if the content of the notice and agenda may be attributed to Ms. Pierce, such speech was not calculated to disclose misconduct. The notice simply gave the date and time of the special meeting, and the agenda merely stated that there would be a closed meeting to discuss the employment status of the director and deputy director of the OVDA. Neither document disclosed evidence of corruption, impropriety or other malfeasance. Nor does it announce a meeting which is open to the public. Instead, based on the entire record, it appears that the agenda item grew out of an internal dispute within the department, essentially a private matter, with no relevance to the public interests. See Conaway, 853 F.2d at 796.
 
 
 21
 In addition, the fact that the speech occurred in the course of Ms. Pierce's official duties significantly weighs against a finding that such speech addressed a matter of public concern. See Koch v. City of Hutchinson, 847 F.2d 1436, 1442-43 (10th Cir.), cert. denied, 488 U.S. 909 (1988). Because Ms. Pierce's "speech" did not address a matter of public concern, it was not protected by the First Amendment.
 
 
 22
 Finally, we agree with the district court's conclusion that Ms. Pierce failed to show that her termination violated the public policy of the state of Oklahoma. In Burk v. KMart Corp., 770 P.2d 24, 28 (Okla.1989), the Oklahoma Supreme Court adopted a public policy exception to the at-will employment doctrine "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law." The court cautioned, however, that "[i]n light of the vague meaning of the term public policy ... the public policy exception must be tightly circumscribed." Id. at 28-29. The tort is only available "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Id. at 29.
 
 
 23
 Ms. Pierce argues that the Open Meeting Act, Okla. Stat. tit.25, 301-314, sets forth a clear and compelling public policy favoring the filing of meeting notices and agendas. While this may be true, Ms. Pierce was not discharged for the act of filing a notice and agenda. Instead, she was terminated for accepting the notice and agenda from someone other than the person expressly authorized by the Commission to prepare such documents. The fact that the papers were filed with the Secretary of State had no bearing on Ms. Pierce's termination. Because liability under the public policy exception requires that the discharge be significantly motivated by the employee's attempt to engage in conduct protected by statute, Ms. Pierce has not established that her termination entitles her to a tort remedy. See White v. American Airlines, Inc., 915 F.2d 1414, 1420-21 (10th Cir.1990).
 
 
 24
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Ms. Pierce argues that the doctrine of jus tertii permits her to assert the rights of Chairman Nolan and Vice-Chairman Factory, the authors of the notice and agenda, citing Craig v. Boren, 429 U.S. 190, 194 (1976). This doctrine, which applies primarily when statutes are challenged as overbroad, has no application in this case. Because the notice and agenda were published without interference, and the authors have not suffered any adverse consequences as a result, Nolan and Factory's First Amendment rights have not been violated. Therefore, there are no third-party rights that can be asserted by Ms. Pierce