**Ronald S. MICHELIN, Plaintiff,**

v.

**Andrew E. JENKINS III, et al., Defendants.**

Civ. A. No. 87–3116.

United States District Court, District of Columbia.

Jan. 6, 1989.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case is before the Court on defendants' motion to dismiss. The facts in this case are in dispute. For the purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. 5 Wright and Miller, Federal Practice and Procedure, § 1357 (2d ed. 1984). After careful consideration of the record in this case, the motions and opposition thereto, the Court concludes for the reasons set out below that this case must be dismissed.

### I.

Plaintiff, a white male, has brought this action pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, the First and Fourteenth Amendments of the Constitution of the United States, and common law claims of libel and slander, wrongful, willful or negligent termination of employment, intentional infliction of emotional distress, and tortious interference with employment status. Plaintiff seeks compensatory damages in the form of back pay from all defendants, and the difference between what he would have been entitled to as a permanent employee and his pay as a temporary teacher, and punitive damages of $250,000.00.

Plaintiff graduated with a teaching degree from D.C. Teacher's College and was hired as a teacher by the D.C. Public Schools (herein "DCPS") in September of 1966. Since then he has taught in several schools during his 21 year teaching career with DCPS. He was transferred to Hardy School in February of 1983. Plaintiff first achieved "permanent" employee status in the Fall of 1968.

In September of 1980, plaintiff was notified by the DCPS's personnel office that his employment status was being changed from "permanent" to "temporary" due to plaintiff's failure to complete a continuing education course which was required for his five year recertification. Plaintiff informed the personnel office that he had arranged to complete the course the previous year, but an automobile accident left him hospitalized and temporarily disabled and unable to attend classes to complete the course. Plaintiff asserts that Mr. Solomon Kendricks at the Teacher Certification office of DCPS informed plaintiff that he would qualify for a temporary medical waiver of the course requirements until such time when he could complete the course, and that plaintiff would be allowed to keep his job in the interim.

Plaintiff asserts that he did complete the required course in the fall of 1980 and submitted proof of such completion along with his physician's certificate. The personnel office never reclassified plaintiff as "permanent". Plaintiff continued to work in the school system. He was a temporary teacher at Moten Middle School for school year 1980–81. On October 24, 1981, plaintiff was assigned to teach social studies at Alice Deal Junior High School as a temporary teacher where he taught the remainder of the school year 1981–82 and the fall of 1982. During the summer of 1983, plaintiff was offered a position at Hobson

Middle School which he refused. Plaintiff contends that he was not informed that the position he was offered at Hobson Middle School had any different status than the position at Hardy. Plaintiff argues that as a result of his misclassification as "temporary", he suffered a loss of job security and a lower pay scale than what he was entitled.

Plaintiff made numerous efforts to have his classification changed from "temporary" to "permanent". Plaintiff contends that on numerous occasions between 1983 and 1987 plaintiff's supervisor informed him that she and Dr. Handy were working on confirmation of his permanent status. In June of 1987, plaintiff was asked to participate in the secondary school improvement committee with four other teachers of the school. The secondary school improvement committee was intended to perform a critical review of the administration and performance of the school. At the committee's meeting on June 17, 1987, in which plaintiff participated, several teachers criticized the principal and the Region B administration for poor, sloppy and inadequate administration.

On or about mid-August of 1987, when plaintiff appeared at Hardy School to pick up his check, defendant Garnett informed plaintiff that he was not on the school's list of teachers for the 1987–88 school year, and that he should check with the personnel office. Plaintiff was informed that defendant Handy, the Region B Superintendent, had terminated him because he had only "temporary" status and as such was automatically subject to non-renewal at the end of each school year. Plaintiff later met with defendant Jenkins, then Deputy Superintendent, who informed plaintiff that he had been terminated by Dr. Handy due to an incident wherein plaintiff allegedly inflicted corporal punishment on a student. Plaintiff alleges that the defendants termination of his employment was motivated by his participation and association with the school improvement committee, and that the report of corporal punishment was fabricated in order to justify the wrongful termination. Plaintiff was replaced in his teaching position at Hardy School by a Black male, who, plaintiff contends has less experience and qualifications than does plaintiff.

## II.

Accepting the allegations in plaintiff's complaint as true, there are numerous questions raised about the DCPS handling of the plaintiff and DCPS's motive in terminating him; however, the complaint does not state a claim under §§ 1983, 1985(3) and 1986 or the Constitution.

In order to establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that a policy of the municipality is the cause of his constitutional deprivation. A municipality may only be sued for constitutional deprivations visited pursuant to governmental custom as well as deprivations pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The moving force for the alleged constitutional violation must be a policy or custom of the municipality. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985). There has been no allegation that a policy of the District of Columbia caused the harm alleged by the plaintiff. *See Harris v. District of Columbia*, 652 F.Supp. 154, 156–158 (D.D.C.1986) (plaintiff failed to allege that a policy of the District of Columbia caused or contributed to her alleged mistreatment).

In support of his argument that the actions taken against the plaintiff were pursuant to a "policy" or "custom", plaintiff states:

Each "personnel action" form received by plaintiff since the fall of 1980 is the core and basis of this suit. How much more official can conduct complained of be? (note the Flag of the District of Columbia at the top left of each Personnel Action form and the number of times the word "officially" appears—Defendant's Exhibits N–1–43). We're not talk-

ing about an instance where some low level bureaucrat takes a whack at the plaintiff in the parking lot. This is an eight year "official" employment status case. Plaintiff's Memorandum Of Points And Authorities In Opposition To Defendant's Motion To Dismiss at 5. Plaintiff appears to suggest that because correspondence with DCPS was on District of Columbia letter head, that constitutes "official policy" of the District of Columbia. However, because the correspondence sent to the plaintiff was on District of Columbia letter head does not alone constitute "official policy" of the District of Columbia. Plaintiff fails to show any "custom" or "policy" adopted by the District of Columbia.

■ Mr. Jenkins, Ms. Garnett, and Ms. Handy are being sued in their official capacities, plaintiff's claims against them under §§ 1983, 1985, and 1986 must be dismissed for failure to state a claim for which relief can be granted.[1] Plaintiff has failed to show a policy that the individual defendants followed that led to his alleged mistreatment. Further, the Board of Education is not a legal entity, and therefore it is not subject to suit. *Miller v. Board of Education of the District of Columbia*, 106 F.Supp. 988, 989 (D.D.C.1952).

### III.

■ In order to establish a cause of action under 42 U.S.C. § 1985(3), the complaint must state that there was a conspiracy motivated by some racial, or perhaps class based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). First, on the facts as alleged before this Court, there can be no conspiracy between the District of Columbia Board of Education and its officials to violate plaintiff's rights, since these defendants com-

prise a single entity, not capable of entering into a conspiracy. *Gladden v. Barry*, 558 F.Supp. 676, 679 (D.D.C.1983) (the weight of authority holds that there can be no conspiracy if the conduct complained of is essentially a single act by a single entity). Second, even assuming *arguendo* that such a conspiracy did exist, there is no allegation that the acts of the defendants were motivated by racial or otherwise class based invidiously discriminatory animus. *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. Further, where no claim is stated under 42 U.S.C. § 1985(3), no claim is stated under 42 U.S.C. § 1986. *Creative Environments, Inc., v. Estabrook*, 680 F.2d 822 (1st Cir.1982), *cert. denied* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Similarly, there is no need to provide relief under § 1988 which provides for attorney's fees in civil rights cases.[2]

### IV.

■ Plaintiff's First Amendment claim is governed by *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and its progeny. As later elaborated by the Supreme Court, the *Pickering* cause of action has four elements: (1) the public employee must have been speaking on a matter of public concern;[3] (2) the court must "balance" the interest of the employee, "as a citizen, in commenting upon matters of public interest and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees;" (3) the employee must prove that his speech was a substantial or motivating factor in his discharge; (4) the government must be given an opportunity to prove that it would have reached the same decision even absent the protected conduct. *Hall v. Ford*, 856 F.2d 255, 258

---

1. Plaintiff's complaint states he is suing Mr. Jenkins, Ms. Garnett and Ms. Handy individually and in their official capacity. For the purpose of § 1983 in order to sustain a state actor claim, the suit is limited to their official capacity.

2. In view of the dismissal of plaintiff's claims grounded in federal law, this Court does not

have jurisdiction under 28 U.S.C. § 1331. Further diversity jurisdiction is not available in this case.

3. If the speech is not of public concern, "it is unnecessary ... to scrutinize the reasons for [the] discharge," *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

(D.C.Cir.1988) (citations omitted). The first two inquiries are questions of law for the court to resolve; while, the latter two are questions of fact ordinarily left to the jury. *Id.* (citations omitted).

 As the Court noted earlier, in a motion to dismiss the Court must accept as true the plaintiff's factual allegations. However, plaintiff must set forth "well-pleaded facts" that constitute a cause of action. Plaintiff states:

> In June of 1987 [p]laintiff was asked to participate in the secondary school improvement committee with four other teachers of the school. The secondary school improvement committee was intended to perform a critical review of the administration and performance of the school as mandated by the Superintendent's office and/or the Board of Education.

Complaint at para. 20.[4] Plaintiff further states:

> At the committee's meeting of June 17, 1987, in which [p]laintiff participated, several teachers criticized the principal and the Region B administration for poor, sloppy and inadequate administration. The committee's final written report was highly critical of the principal's conduct and the administration's conduct and blamed the school's supervisory administration for lack of coherent and fair teacher and student policies.

Complaint at para. 21. Plaintiff's complaint does not state that he criticized the school; therefore, he has not exercised his First Amendment rights. The Court concludes that plaintiff has failed to plead facts that constitute a cause of action under the First Amendment. The Court does not reach the analysis required by *Pickering*.

---

**4.** The Court notes that plaintiff's complaint suggests that his termination was due to DCPS's failure to reclassify him from "temporary" to "permanent" and racial motives, as well as, retaliation for exercising his First Amendment rights. Federal Rules of Civil Procedure 8(e) allows a party to set forth two or more statements of a claim. However, plaintiff has failed to plead one theory that constitutes a cause of action in Federal Court.

## V.

 This Court does not have jurisdiction pursuant to 42 U.S.C. § 2000e et seq., because plaintiff has failed to exhaust his administrative remedies as required by law. Further, the Court declines to exercise pendant jurisdiction over plaintiff's remaining claims because there is no independent basis of federal jurisdiction. *See, Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed. 2d 276 (1976).[5] Accordingly, for the reason set forth above, the Court must dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

An appropriate Order accompanies this memorandum.

---

**5.** Plaintiff attempted to amend his complaint to assert diversity as an alternative basis for jurisdiction if the motion to dismiss was granted. Because plaintiff failed to amend in a timely fashion, the motion is denied. The Court also notes that plaintiff's motion is futile because there would be no complete diversity in the case.