**ESTATE of Anthony PHILLIPS, et al. Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al. Defendants.**

**No. CIV.A.00–1113 (EGS).**

United States District Court, District of Columbia.

March 31, 2003.

Ralph Louis Lotkin, Law Offices of Ralph L. Lotkin, Washington, DC, Joel Marc Abramson, Columbia, MD, Babak Movahedi, Washington, DC, for Estate of Anthony Sean Phillips, Sr., Joseph A. Morgan.

Thomas L. Koger, Falls Church, VA, Patricia Ann Jones, Daniel A. Rezneck, Office of Corporation Counsel, Washington, DC, for District of Columbia.

Donna M. Murasky, Patricia Ann Jones, Office of Corp. Counsel, D.C., Washington, DC, Nicholas Stillwell McConnell, James A. Allen, Esquire, Jackson & Campbell, P.C., Washington, DC, for Donald Edwards, Frederick C. Cooper.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

### Introduction

On May 30, 1999, a fire claimed the lives of two firefighters and seriously injured three others. Plaintiffs in the instant case, two injured firefighters and the estates of two firefighters who perished in the fire, bring suit against the District of Columbia, the former Fire Chief and individual employees of the fire department for alleged constitutional violations and intentional torts giving rise to injuries and loss of life. Pending before the court is defendants' motion to dismiss.[1]

Upon consideration of defendants' motion to dismiss, the oppositions and replies thereto, oral argument of counsel heard on March 20, 2003, and the relevant statutory and case law governing the issues, the Court finds that defendants' motion to dismiss is **DENIED IN PART** with respect to plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 against individual defendants and the District of Columbia, *GRANTED IN PART* with respect to plaintiffs' claims brought pursuant to 42 U.S.C. § 1985 against the District of Columbia and individual defendants, **GRANTED IN PART** with respect to plaintiffs' claims of intentional torts against the District of Columbia, and DENIED IN PART with respect to plaintiffs' claims of intentional torts against individual defendants.

### I. Background

#### A. The Cherry Road Fire

On May 30, 1999, a fire broke out in a townhouse at 3146 Cherry Road, N.E.,

---

1. Defendants District of Columbia, Cooper and Edwards have filed a joint motion to dismiss. Defendant Wilk has filed an individual motion to dismiss. The cases have been consolidated for purposes of the instant motion and their individual motions to dismiss are herein discussed in conjunction with one another.

Washington, D.C. The fire took the lives of District of Columbia Fire Department ("DCFD") firefighters Anthony Sean Phillips, Sr. and Louis J. Matthews. Firefighter Joseph Morgan suffered severe burns, and DCFD Lieutenant Charles Redding was also burned in the fire.

Firefighter Phillips was assigned to DCFD Engine Co. 10, and Matthews and Morgan were assigned to DCFD Engine Co. 26. Redding was an officer assigned to Engine Co. 26. The firefighters were responding to a multi-alarm fire on Cherry Road.

Firefighter Phillips entered the first floor of the residence with his officer, Lieutenant Cooper, as did Matthews, Morgan and Redding. After entering the building, Cooper was separated from Phillips. Cooper exited the building and subsequently learned that Phillips had not. When Redding entered the townhouse, he had been informed that the fire was on the first floor of the house. As the firefighters were inside the house, a truck arrived on the scene and began ventilating the front of the townhouse. A second truck then arrived and prepared to ventilate the basement.

While the firefighters were inside the house, the Incident Commander ("IC") twice radioed Redding to locate his position. However, Redding did not receive this transmission. The IC had not established a fixed command post and was relying on a weaker portable radio device rather than the stronger radio mobile. The firefighters inside the house were unaware of each other's presence. Communications were impaired and visibility was poor. Redding did not even have a hand light with which to illuminate the inside of the townhouse.

The improper and untimely ventilation of the house resulted in a sudden increase in temperature. Redding ran from the townhouse, with his face and back burning. He relayed to the IC that Matthews was still in the townhouse. Redding was unaware that Morgan and Phillips were also in the townhouse at that time. The IC did not order a rescue effort until approximately 90 seconds later, when firefighter Morgan exited the house critically injured. Firefighter Phillips was found unconscious and severely burned, and was removed from the townhouse approximately seven minutes after the rescue effort began. Matthews was found unconscious and severely burned approximately eleven minutes after the rescue effort began. Phillips died of his injuries approximately 23 minutes after his removal from the townhouse, while Matthews died of his injuries on the following day.

National Institute for Occupational Health and Safety ("NIOSH") investigators concluded that the DCFD did not follow standard operating procedures ("SOPs"). Specifically, the investigators found that there was a failure to properly ventilate the building and to coordinate personnel activities; that there was a failure to utilize the communication system effectively; and that there was a continuing failure surrounding the maintenance of self-contained breathing apparatuses as well as the need to provide all firefighters with automated personal alert safety systems.

The District of Columbia's Reconstruction Report mirrored the findings of NIOSH and restated criticisms articulated in a report published two years earlier. The earlier report focused on the 1997 death of firefighter John Carter in a fire at a grocery store. The Cherry Road report recognized that deficiencies in training, staffing, equipment and administration, noted in the Carter report, persisted and stated that "[f]urther inaction on these recommendations cannot be tolerated."

The report concluded that "[t]he events that took place demonstrate the serious consequences that result from failure to train, equip, and staff appropriately."

Plaintiffs point to a number of deficiencies in the defendants' implementation of standard operating procedures, which they allege resulted in the death and injuries of the firefighters at Cherry Road. Phillips' complaint, for example, alleges:

"(a) the failure to follow appropriate equipment backup procedures (Engine No. 12, as fourth-due engine company, proceeded to the front of the structure and took position. By so doing, Engine No. 12 did not backup Engine No. 17, the second-due engine company, in the rear of the structure)";

"(b) the failure by an Officer-in-Charge (Defendant Cooper) to maintain required contact with a member of his crew, Firefighter Phillips, on the fireground";

"(c) the failure by Defendant Cooper to immediately account for, report the fact of, and locate a missing firefighter (Firefighter Phillips)";

"(d) the failure by the D.C. Fire Department to have sufficient personnel on the scene to perform effectively";

"(e) the failure to provide a size-up of the rear conditions (a size-up of rear conditions was never reported by Engine No. 17, the first arriving unit in the rear)"; and

"(f) the failure to have an available backup unit in service to replace Truck No. 13 which delayed ventilation procedures."

Phillips Compl. at ¶ 27.

Plaintiffs claim that "[s]uch policy and custom not to implement recommendations to improve operation of the DCFD and enforce SOP's was the product of a conscious and deliberate decision and not simple or negligent oversight made under emergency, spur of the moment conditions without either the opportunity or time for deliberation." Pls.' Opp'n at 8.

### B. Plaintiffs' Claims

In this matter, four cases have been consolidated for all purposes:

*Lysa Lambert Phillips v. District of Columbia,* Civ. Action No. 00–1113

*Cassandra Brown Shields v. District of Columbia,* Civ. Action No. 00–1157

*Joseph Morgan v. District of Columbia,* Civ. Action No. 00–1162

*Charles Redding v. District of Columbia,* Civ. Action No. 00–1225

Plaintiffs Lysa Lambert Phillips and Cassandra Brown Shields bring suit on behalf of the estates of the deceased firemen, Phillips and Matthews. In addition, Phillips brings claims individually and as mother and next best friend of her two minor children, and Brown brings suit on behalf of firefighter Matthew's two minor children. Plaintiffs and firefighters Joseph Morgan and Charles Redding are firefighters who were injured in the Cherry Road Fire and bring suit on their own behalf.

### I. Plaintiffs' Constitutional Claims

Plaintiffs' constitutional claims are asserted against the District of Columbia as well as against defendants Donald Edwards, Frederick C. Cooper, Jr., Thomas Tippett and Damian A. Wilk in their personal capacities.[2] Phillips and Redding al-

---

2. Phillips brings constitutional claims against Edwards and Cooper in their personal capacities. *See* Phillips, Shields, Morgan Compl. ("Plaintiffs' Compl.") (Counts I and II).

Shields brings constitutional claims against Edwards in his personal capacity. *See Id.* (Count VI). Plaintiff Morgan brings constitutional claims against Edwards in his personal

lege constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985. Morgan and Shields assert claims pursuant to 42 U.S.C. § 1983 only.

Phillips and Shields each bring two claims of violations of constitutional and civil rights.[3] The first counts are characterized as "survival actions" brought by Shields and Phillips as the representatives of the dead firemen's estates. The second counts are characterized as "wrongful death" actions, with Phillips asserting the claim individually and on behalf of herself and her deceased husband's two minor children, and Shields bringing suit as the next best friend of Matthews' minor children.

### 2. Plaintiffs' Non-constitutional Claims for Intentional Tortious Conduct:

All plaintiffs assert non-constitutional claims for "intentional tortious conduct" pursuant to local and common law and seek compensatory damages. All plaintiffs bring such claims against the District and against Edwards in his personal and official capacities. In addition, Phillips brings tort claims against Cooper in his personal and official capacities and Redding brings tort claims against defendants Wilk and Tippett in their personal and official capacities.

Phillips brings one "intentional tort" claim as a survival action, as representative of her husband's estate. She brings a second count as a wrongful death claim, on behalf of herself and her minor children. Similarly, Shields' complaint contains two tort claims against Edwards, one as a survival action, asserted as representative of her son's estate, and a second claim of

wrongful death, brought on behalf of herself and her son's minor children.

All plaintiffs seek punitive damages for defendants' alleged intentional tortious conduct.

As personal representative of the decedent, Phillips asserts punitive damages against the District of Columbia and against Edwards and Cooper in their personal and official capacities. Shields seeks punitive damages for intentional tortious conduct by the District and Edwards in his personal capacity as personal representative of Matthews and on behalf of Matthews' minor children. Plaintiff Morgan seeks punitive damages against the District and against Edwards in his personal and official capacities. Redding demands punitive damages against the District, as well as against Wilk, Tippett and Edwards in their personal and official capacities.

### 3. Procedural history

On February 22, 2001, the District of Columbia, Edwards and Cooper filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Having considered defendants' motion, the oppositions and replies thereto, oral arguments heard on January 22, 2002 and the relevant statutory and case law governing the issues, this Court issued an order on January 30, 2002. The January 30, 2002 order included the following provisions:

(1) Plaintiffs' claims against all individual defendants were dismissed without prejudice subject to reconsideration upon filing of an amended complaint clearly identifying whether individual defendants are being sued in their individual or official capacities;

---

capacity. See Id. (Count XI). Redding brings constitutional claims against Edwards, Tippett and Wilk in their personal capacities. See Redding Compl. (Count I).

**3.** Phillips' two claims assert violations under §§ 1983 and 1985. Shields' two claims are brought pursuant to § 1983 only.

(2) Defendant District of Columbia's motion for judgment on the pleadings was denied in part with respect to plaintiffs' claims brought pursuant to 42 U.S.C. §§ 1983 and 1985;

(3) Defendant District of Columbia's motion for judgment on the pleadings was granted in part with respect to plaintiffs' intentional tort claims;

(4) Plaintiffs' intentional tort claims against the District of Columbia were dismissed without prejudice.

Pursuant to the Order, plaintiffs Phillips, Shields and Morgan filed an amended complaint on February 25, 2002. Plaintiff Redding filed an amended complaint on February 26, 2002. On March 15, 2002, defendants District of Columbia, Edwards and Cooper filed a motion to dismiss plaintiffs' complaint. Defendant Wilk filed a motion to dismiss Redding's complaint. On March 25, 2002. Defendant District of Columbia filed a motion to dismiss Redding's complaint on April 1, 2003.

Pending before the Court are the motion to dismiss plaintiffs' amended complaint filed by defendants District of Columbia, Edwards and Cooper, the motion to dismiss plaintiff Redding's amended complaint filed by defendant District of Columbia, and the motion to dismiss plaintiff Redding's complaint by defendant Wilk. As the motions raise common issues, the Court will address them jointly as a single motion to dismiss.

## II. Discussion

### A. Standard of Review

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S.

41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal*, 16 F.3d at 1276.

### B. Plaintiffs' Constitutional Claims

### 1. Section 1983 Claims Asserted Against the District

Plaintiffs bring suit against the District of Columbia pursuant to 42 U.S.C. § 1983. Suit may lie against the District as a municipality, although liability arises under the Fifth, rather than the Fourteenth, Amendment. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

■ Section 1983, by its terms, does not create substantive constitutional rights. Rather, it provides remedies only for deprivations of rights established by the Constitution or federal laws. *See Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

■ In a § 1983 action against a municipality, the plaintiffs must demonstrate that they were deprived of an actual constitutional right by a pattern or practice of the defendant municipality. *Monell v.*

*New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

 From the time of its early explanations of the right to substantive due process, the Supreme Court has "understood the concept to be protection against arbitrary action." *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In § 1983 cases involving due process challenges to executive action, the threshold question is whether the behavior of the officials is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 848 n. 8, 118 S.Ct. 1708. In the case of *Butera v. District of Columbia*, the Court noted that "[t]his stringent requirement exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C.Cir.2001). In *Lewis*, the Court suggested that, in some circumstances, conscience shocking conduct will be evidenced by something less than intentional conduct. *Lewis*, 523 U.S. at 849, 118 S.Ct. 1708. Such a circumstance may exist where the state has a heightened obligation toward the individual, or where the state's "agents create or increase the danger to an individual." *Butera*, 235 F.3d at 652.

While *Butera* recognized the possibility of a substantive due process violation where the state has *affirmatively* created a dangerous situation, the Supreme Court has recognized that a municipality's *failure* to adequately train employees may rise to the level of "deliberate indifference." In *City of Canton v. Harris*, the Supreme Court noted that:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (giving example of failure to train armed police officers as to constitutional limitations of use of deadly force.) *Lewis*, 118 S.Ct. 1708 acknowledged that "deliberate indifference can rise to a constitutionally shocking level." *Lewis*, 523 U.S. at 852, 118 S.Ct. 1708. Reflecting on "the luxury enjoyed by prison officials of having time to make unhurried judgments," the *Lewis* Court noted that "[w]hen ... opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Id.* at 844, 118 S.Ct. 1708. In *Daskalea v. District of Columbia*, the D.C. Circuit held that the Department of Corrections' deliberate indifference to conduct that violated plaintiff's Eighth Amendment rights was sufficient to hold the city liable under Section 1983. *Daskalea v. District of Columbia*, 227 F.3d 433, 440–41 (D.C.Cir.2000). The *Daskalea* court relied on *Harris* and D.C. Circuit precedent for

the proposition that failure to train or supervise employees adequately may constitute a "policy or custom" under *Monell* when the failure amounts to "deliberate indifference" toward the constitutional rights of persons in its domain.

In *Washington v. District of Columbia*, the plaintiff, a prison guard, alleged that the defendants' reckless failure to provide him with a safe working environment represented a constitutional violation. *Washington v. District of Columbia*, 802 F.2d 1478, 1481 (D.C.Cir.1986). The guard alleged that the city was on notice of numerous safety problems at Lorton. *Id.* The D.C. Circuit distinguished plaintiff's claims from those of prisoners, who are in state custody and whom the state is therefore obligated to protect. *Id.* at 1481–82. The Circuit stated:

> Prison guards, unlike prisoners in their charge, are not held in state custody. Their decision to work as guards is voluntary. If they deem the terms of their employment unsatisfactory, e.g., if salary, promotion prospects, or safety are inadequate, they may seek employment elsewhere. The state did not force appellant to become a guard, and the state has no constitutional obligation to protect him from the hazards inherent in that occupation. *Accord* [*Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir.1986) ] ("The state must protect those it throws into snake pits, but the state need not guarantee that volunteer snake charmers will not be bitten.")

*Id.* at 1482.

The 1992 Supreme Court decision in *Collins v. City of Harker Heights* limits the D.C. Circuit's stark conclusion that state employees are mere volunteers for snake bites. *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In *Collins*, the Court stated that "[t]he First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections. Neither the fact that petitioner's decedent was a government employee nor the characterization of the city's deliberate indifference to his safety as something other than an 'abuse of governmental power' is a sufficient reason for refusing to entertain petitioner's federal claim under § 1983." *Collins*, 503 U.S. at 120, 112 S.Ct. 1061. In *Collins*, the plaintiff, the wife of a deceased city sanitation worker, advanced two theories: that the city had a constitutional obligation to provide a safe workplace, and that the city's "deliberate indifference" to her husband's safety was arbitrary government action. *Id.* at 1069. Rejecting the first theory out of hand, the Court then held that the plaintiff had not sufficiently alleged arbitrary government action that would shock the conscience. *Id.* at 1070 (relying on "presumption that the administration of government programs is based on a rational decision-making process that takes account of competing social, political, and economic forces."). Thus, *Collins* does not suggest that a government employee may never assert a substantive due process claim against his or her employer.

■ In the present case, plaintiffs allege a policy and custom that shocks the conscience and implicates the deceased and injured firefighters' Fifth Amendment liberty interests. They note that "any question about whether a specific category of constitutionally improper conduct meets required criteria would, of course, be a jury question in evaluating relevant facts." Pls.' Opp'n at 14. (citing *Butera v. District of Columbia*, 83 F.Supp.2d 15 (D.D.C.

1999), *aff'd in part and rev'd in part,* *Butera,* 235 F.3d 637) (holding that "[w]hether the alleged deliberate indifference . . . was sufficient to 'shock the conscience' and thereby offend constitutional guarantees, is a subject upon which reasonable minds could differ and, therefore, is left properly to the jury.").

The District of Columbia maintains that plaintiffs have failed to demonstrate that the municipality is the "moving force" behind the alleged constitutional violations. Defs.' Mot. at 2 (citing *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509, (1981.))

Just as they did in their opposition to defendants' motion for judgment on the pleadings, upon consideration of which this Court denied the District's motion to dismiss plaintiffs' § 1983 claims, plaintiffs in the present instance have sufficiently alleged that the government violated their substantive due process rights by acting with deliberate indifference. In the words of the *Lewis* Court, the instant case presents evidence of "opportunities to do better" on the part of the city "teamed with a protracted failure even to care." As noted previously, the DCFD had been put on notice of the serious consequences that could result from its failure to train, equip, and staff appropriately. In light of events surrounding and resulting from the 1997 grocery store fire, as well as the NIOSH report and deficient implementation of the DCFD's standard operating procedures, the Court finds that the story plaintiffs paint shocks the conscience sufficiently to withstand the District's motion.

*2. Section 1983 Claims Brought against Individual Defendants*

■ Personal capacity suits seek to impose individual liability upon government officers for actions taken under color of state law. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Thus, "[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). While plaintiffs in personal capacity suits need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.* at 166–167, 105 S.Ct. 3099.

■ Government officials sued in their personal capacities may be shielded from liability for damages in a § 1983 action if, at the time they acted, the statutory or constitutional right allegedly violated was not "clearly established." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The contours of the right must be sufficiently clear that a reasonable official would understand that his or her actions or omissions violated that right. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034.

■ In the case at hand, plaintiffs assert that defendants knew of the critical need to institute necessary training and to enforce mandatory operating procedures. They further allege that the defendants "knew of the dangers if [they] did not do so, affirmatively chose to do nothing and by so doing . . . created and/or enhanced the risk of injury to firefighters." Pls.' Opp'n. at 23. Plaintiffs' position is that, because of the mandatory nature of the standard operating procedures, their implementation was ministerial rather than discretionary.

Plaintiffs' theory rests on the argument that qualified immunity is available only in those circumstances involving a governmental official's act of discretion. *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) ("a discretionary act is one that involves choice or judgment."). However, when determining whether a reasonable official in defendants' position would have known that his or her actions violated a clearly established constitutional or statutory right, the Court may look no further than the statute or constitutional right that forms the basis for plaintiff's claim. *Davis v. Scherer,* 468 U.S. 183, 193–96, n. 12, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

> [O]fficials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages.

*Id.* at 194 n. 12, 104 S.Ct. 3012.

Because plaintiffs in this case appear to be relying, as grounds for their § 1983 claims, on the substantive due process right against conscience-shocking executive action, this is the right that must have been "clearly established" for purposes of defeating defendants' qualified immunity. As the discussion above highlighted, while its contours are no "calibrated yardstick," the right to be free of conscience-shocking executive action is firmly established. *Lewis,* 523 U.S. at 847, 118 S.Ct. 1708. Similarly, the potential for deliberate indifference to raise to such a level as to shock

the conscience has been repeatedly recognized.

In their complaint, plaintiffs allege counts against Edwards, Cooper and Wilk in their personal capacities. At the time of the incident, these defendants held the positions of Fire Chief, Lieutenant, and Battalion Fire Chief 1/Incident Commander, respectively. As such, it is fair to assume that they had advance notice of the fatal pattern and practice of SOP violations within the Fire Department. According to plaintiffs, whose statements the court must accept as true for purposes of the present motion, the named defendants "either committed, or by virtue of the policy of the D.C. Fire Department allowed, or established an operational environment that enabled, numerous violations of the mandatory Standard Operating Procedures to occur at the Cherry Road Fire …" Pls.' Compl. ¶ 27. Edwards, specifically, was "responsible for training instruction, supervision, discipline, control, and conduct of firefighters, including the compliance with all policies, customs, instructions, and Standard Operating Procedures." Compl. ¶ 26. In light of the supervisory and decision-making capacities of the named individuals, and the ongoing failure to institute corrective training or to follow the DCFD's own rules even after the scathing reviews contained in a number of safety reports, the Court cannot at this juncture find that plaintiffs "can prove no set of facts" that would support their claims for relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Because the Court must accept all of plaintiffs' allegations as true, and because plaintiffs are entitled to all reasonable inferences, the Court cannot presently dismiss the plaintiffs' § 1983 claims against individual defendants.[4]

---

**4.** Subsequent stages of the proceedings may well reveal that individual named defendants were not responsible for acts or omissions in violation of clearly established law and are entitled to summary judgment as a matter of law. *See, e.g. Farmer v. Moritsugu,* 163 F.3d

*3. Section 1983 Claims Brought as "Wrongful Death" Claims*

■ The constitutional claims brought as "wrongful death" actions raise different constitutional questions. Although plaintiffs Phillips and Shields do not identify the constitutional rights affected by the factual allegations contained in their complaints, they appear to allege that the minor children of the deceased firefighters have a substantive due process right to a relationship with their fathers. Similarly, as the spouse of firefighter Phillips, Ms. Phillips' complaint presumably asserts a constitutional right to a spousal relationship with her husband, free of government interference.

The D.C. Circuit, in *Harbury v. Deutch,* held that, "in view of Supreme Court precedent and in light of the Court's admonition in Collins, we cannot extend a constitutional right to familial association to cases where, as here, the government has indirectly interfered with a spousal relationship." *Harbury v. Deutch,* 233 F.3d 596, 606 (D.C.Cir.2000), *rev'd on other grounds, Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). The Court refrained from "decid[ing] whether the constitutional right to continuing familial association requires allegations of purpose to interfere with the right, nor whether the constitutional right to familial association extends to the mar-

riage relationship." *Id.* In the language of *Harbury,* in the instant case Ms. Phillips has asserted an "indirect" interference with her spousal relationship caused by defendants' conduct at the Cherry Road fire and in preparing to fight such fire. Cf. *Butera,*[5] 235 F.2d at 656 n. 23 (citing *Harbury* and noting that "[b]ecause we hold that a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests, we do not reach the District of Columbia's contention that Terry Butera's claim fails because the District of Columbia's actions were not intentionally directed or aimed at her relationship with her son".)

The D.C. Circuit has not considered the issue of whether a minor child may bring a § 1983 claim for deprivation of the parent-child relationship. As noted by the Supreme Court, the interest of a parent in the companionship, care, custody, and management of children has high respect. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Several courts have allowed children to maintain § 1983 actions for deprivation of their parent's companionship. *See Smith v. City of Fontana,* 818 F.2d 1411, 1417–20 (9th Cir. 1987), *rev'd on other grounds by Hodgers–Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir.1999). (children may bring § 1983 ac-

610 (1998) (reversing the District Court's denial of defendant's motion for summary judgment on qualified immunity grounds and holding that plaintiff's complaints implied an obligation falling far outside defendant's scope of employment, that defendant's conduct met a standard of objective legal reasonableness, and that there was nothing else in the record on which to pin deliberate indifference.)

5. In *Butera,* the D.C. Circuit rejected the idea that there is a constitutional right to the companionship of an adult child, which implicates substantive due process concerns.

*Butera,* 235 F.3d at 654. The Circuit has recognized the right of a parent to maintain an ongoing relationship with his children. *Franz v. United States,* 707 F.2d 582 (D.C.Cir. 1983). However, in *Butera,* the Circuit emphasized that parents' right to custody of their children and their right to raise children stems from a right to be free from government interference in these activities. *Butera,* 235 F.3d at 655. The right of a parent to companionship of an adult child did not implicate the same concerns as those at issue in a parent's right to raise minor children.

tion under due process clause for deprivation of father's companionship where police officers killed father during his arrest); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–48 (7th Cir.1984) (father, but not siblings, may recover in § 1983 action under due process clause where police officers shot and killed his son); *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 509 n. 7 (3d Cir.1985) (adopting general holding of Bell, supra); cf. *Purnell v. City of Akron,* 925 F.2d 941, 949 n. 6 (6th Cir.1991) (avoiding the "difficult question of whether the children of [the decedent] ..., could state a claim for damages under § 1983 based on the killing of their father.").

Although other circuits have recognized § 1983 claims brought by minor children, *Harbury* suggests that the D.C. Circuit would limit such claims to those circumstances where the state action has directly impinged on the child-parent, or the spousal, relationship. Accordingly, the defendants' motion to dismiss should be granted with respect to plaintiffs' constitutional "wrongful death" claims.

*4. Section 1985 Claims Brought by Firefighters and on Behalf of Firefighters' Estates*

 Plaintiffs Phillips and Redding also bring § 1985 conspiracy claims against the District and defendants Edwards, Cooper, Tippett and Wilk in their personal capacities.

 Section 1985 creates a cause of action for plaintiffs alleging a conspiracy to violate their constitutional rights. 42 U.S.C. § 1985(c) (violation exists where "two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons ... of equal privileges and immunities under the laws...."). A civil conspiracy occurs when two or more persons acting in concert plan, attempt to commit and/or

commit an unlawful act or a lawful act by unlawful means. *See, e.g., Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994) (holding that in order to state a claim under § 1985, a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States). The Supreme Court has held that the statutory language requiring intent to deprive of equal protection or equal privileges or immunities "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Finally, while this Circuit has not addressed the precise question of whether a municipality can conspire with itself, others have considered similar issues. In the *Hilliard* case, the Fifth Circuit held that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard,* 30 F.3d at 653. In *Hull v. Cuyahoga Valley Joint Vocational School District,* plaintiff alleged that the Cuyahoga School Superintendent conspired with the Executive Director of the district and a school administrator. Each of the alleged conspirators were employees of the School Board. The Sixth Circuit held that, "[s]ince all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.,* 926 F.2d 505, 510 (6th Cir.1991). The general principle that a municipality cannot conspire with itself has been recognized in this jurisdiction. In *Gladden v.*

*Barry*, a case in which plaintiff challenged his demotion by the District of Columbia and defendant Gutierrez in his personal capacity, the United States District Court for the District of Columbia found that there could be no conspiracy because "the conduct complained of [was] essentially a single act by a single entity." *Gladden v. Barry*, 558 F.Supp. 676, 679 (D.D.C.1983). Similarly, in *Michelin v. Jenkins*, the court held that there could be no conspiracy between the District of Columbia Board of Education and its officials to violate plaintiff's rights because the defendants comprised a single entity that was incapable of entering into a conspiracy. *Michelin v. Jenkins*, 704 F.Supp. 1, 4 (D.D.C.1989).

As noted above, plaintiffs in the present case have adequately pled substantive due process violations. Nevertheless, their complaint falls short of establishing a § 1985 conspiracy claim. While plaintiffs maintain that the defendants acted "in concert" to place them in circumstances in which they were likely to be injured, they fail to specify how the defendants conspired or what actions they took in furtherance of their plan. Furthermore, as the court held in *Michelin*, "even assuming, *arguendo*, that such a conspiracy did exist, there is no allegation that the acts of the defendants were motivated by racial or otherwise class based invidiously discriminatory animus." *Id.* (citing *Griffin*, 403 U.S. at 102, 91 S.Ct. 1790). Finally, as evidenced by court decisions from both this jurisdiction and others, it is questionable whether plaintiffs' allegations of a conspiracy between individual municipal employees and the municipality itself could ever pass muster as a matter of law.

### C. Non–Constitutional Claims for Intentional Tortious Conduct

#### 1. Notice Pleading

While defendants argue that plaintiffs have not established intentional tortious conduct on their behalf, see Defs.' Reply at 7, plaintiffs have provided sufficient factual allegations to put defendants on notice as to what conduct they contend constitutes an intentional tort.

In *Atchinson v. District of Columbia*, the D.C. Circuit rejected the defendant's argument that a "complaint's use of the phrase 'deliberate indifference' without 'any facts, or even generalized factual allegations' regarding such alleged indifference render[ed] the complaint inadequate." *Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C.Cir.1996). The Circuit noted that such an argument was inconsistent with the model forms provided in the Federal Rules of Civil Procedure, which simply allege a state of mind "without providing any factual basis for that allegation." *Id.* (describing form complaints for negligence, willfulness and recklessness.)

Thus, while this Court may find that a reasonable inference of intentional conduct may be drawn from plaintiffs' allegations, it need not draw this inference at this stage in the proceedings. The Court must accept as true the plaintiffs' allegations, including those pertaining to the defendants' state of mind.

#### 2. Claims Against Defendant District of Columbia

The District of Columbia Police and Firefighters Retirement and Disability Act ("PFRDA"), D.C.Code §§ 4–601–634, has been consistently construed by the D.C. Court of Appeals to be "the exclusive remedy against the District of Columbia for uniformed personnel" injured in the performance of their duties. *Vargo v. Barry*, 667 A.2d 98 (D.C.1995); *Ray v. District of Columbia*, 535 A.2d 868 (D.C. 1987); *Lewis v. District of Columbia*, 499 A.2d 911, 915 (D.C.1985); *see also Hope v.*

*District of Columbia Metropolitan Police Dep't,* No. 95–7049, 1995 WL 791572 (D.C.Cir. Dec.5, 1995) (exclusive remedy against city was pursuant to PFRDA.) Therefore, defendants' motions to dismiss should be granted with respect to plaintiffs' claims for punitive and compensatory damages asserted against the District of Columbia.

Plaintiffs suggest that *Mayberry* creates an exception to the exclusivity of PMRDA for any intentional tort—including torts allegedly committed by the District of Columbia. However, *Mayberry* does not represent such a broad departure from District of Columbia precedent. Courts have routinely held that the PMRDA is the exclusive remedy for claims brought against the city. The *Mayberry* court was specifically concerned with whether the language and legislative history of the Act extended its exclusivity provisions to actions against co-employees.

District of Columbia case law under the District's Workers' Compensation Act ("WCA"), on which the District courts frequently rely in interpreting the PFRDA, suggests that an employer may be sued for intentional torts. The D.C. Court of Appeals has held that the WCA does not bar a suit against an employer for an intentional tort action. *See Grillo v. National Bank of Washington,* 540 A.2d 743, 748 (D.C.1988). Arguably, *Grillo* may be applied to the instant matter to conclude that the PFRDA does not preclude claims of intentional torts brought against the District or its agents acting in official capacities. However, to expand the existing District of Columbia case law would be inappropriate without any indication from the District of Columbia courts that such actions may be maintained outside of the scope of the PFRDA.

### 3. Claims Against Individual Defendants

Plaintiffs sue the individual defendants in their official and personal capacities. As indicated above, personal capacity suits generally seek to impose personal liability upon government official for actions they take under color of law. *Graham,* 473 U.S. at 165, 105 S.Ct. 3099. In contrast, suits brought against individuals in their official capacities " 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. 2018.)

The PMRDA, as previously stated, is generally the exclusive remedy for any claims against the District of Columbia for injuries arising in the course of firefighters' employment. However, in *Mayberry,* the District of Columbia Court of Appeals recognized that the Disability Act is not the exclusive remedy for intentional acts by a plaintiff's co-employee.

*Mayberry* held that, "[b]ecause the Disability Act is silent as to whether tort actions against co-employees are barred, we are unwilling to interpret it as foreclosing suits against co-employees for intentional torts." *Mayberry,* 742 A.2d at 451. See also *Hamlette v. District of Columbia,* Civ. Action No. 98–2327, Memorandum (Jan. 6, 2000) (relying on *Mayberry* to find that intentional tort claim by one officer against individual officer was not precluded by the Disability Act.) Thus, to the extent that plaintiffs assert intentional tort claims against the individual defendants in their personal capacities, and not as agents of the District of Columbia, their claims are not precluded by the Disability Act. The intentional tort claims brought by plaintiffs against individual defendants acting in their personal capacities therefore survive defendants' motion to dismiss,

while those claims brought against defendants in their official capacities do not.

### 4. Punitive Damages

 Under local law, punitive damages may not be awarded against the District of Columbia. See *Finkelstein v. District of Columbia*, 593 A.2d 591, 599 (D.C. 1991). Pursuant to Supreme Court, District Court and District of Columbia precedent, punitive damages are not recoverable against a municipality absent express statutory intent. *See, e.g., City of Newport v. Fact Concerts*, 453 U.S. 247, 260 n. 21, 101 S.Ct. 2748, 69 L.Ed.2d 616, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C.1975); *Teart v. Washington Metro. Area Transit Authority*, 686 F.Supp. 12 (D.D.C.1988).[6] As damages won against officers in their personal capacity are not drawn from state coffers, punitive damages are recoverable in such suits. *Daskalea*, 227 F.3d at 447.

 Plaintiffs in this case seek punitive damages against the District, as well as against defendants in their personal and official capacities, in connection with their intentional tortious conduct claims. Because there is no statute in the District of Columbia expressly authorizing awards of punitive damages, defendants' motion to dismiss plaintiffs' punitive damage claims is granted with respect to the District of Columbia and its agents acting in their official capacities and denied with respect to plaintiffs' punitive damage claims against officers in their official capacities.

### Conclusion

The District of Columbia's motion to dismiss with respect to the plaintiffs'

§ 1983 claims asserted on behalf of the deceased and injured firefighters against the District and individual defendants should be **DENIED** because plaintiffs have adequately alleged that the District and its employees created a conscience-shocking danger that caused their injuries and death and were deliberately indifferent to the high probability of such tragedy.

Because plaintiffs do not claim that the alleged conspirators were motivated by racial or class-based animus, defendants' motion to dismiss should be **GRANTED** with respect to the § 1985 conspiracy claims. Defendants' motion concerning the constitutional claims of plaintiffs Phillips and Shields that are brought on behalf of the firefighters' surviving children should be **GRANTED** because any constitutional right to be free of government involvement in a spousal or parent-child relationship is affected only indirectly and does not give rise to a § 1983 claim.

Defendants' motion to dismiss should be **GRANTED** with respect to plaintiffs' intentional tort claims against the District of Columbia. With respect to plaintiffs' intentional tort claims against individual defendants, defendants' motion should be **GRANTED** with respect to defendants sued in their official capacities and **DENIED** with respect to those sued in their personal capacities. *Mayberry* establishes that the Disability Act is not the exclusive remedy for alleged intentional torts by coworkers. Plaintiffs' allegations support a reasonable inference that the individual defendants' acts were intentional. Thus, plaintiffs' claims for compensatory and punitive damages against individual defen-

---

**6.** The district court noted that the language in *Smith* leaving open the possibility of punitive damages in "exceptional circumstances," *see Smith*, 336 A.2d at 832, was dicta and, there-

fore, not binding. It further noted that no case had found the "exceptional circumstances" test to have been satisfied.

**86**

dants in their personal capacities withstand the motion to dismiss.

Plaintiffs' claims against the District of Columbia for compensatory and punitive damages for alleged intentional torts are precluded by the Disability Act. Plaintiffs' exclusive remedy against the District of Columbia for tort claims arising from conduct in the scope of employment is provided by the Disability Act. Thus, defendants' motion to dismiss should be **GRANTED** with respect to plaintiffs' tort claims against the District of Columbia.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

Upon consideration of defendants' motion to dismiss, the oppositions and replies thereto, oral argument of counsel heard on March 20, 2003, and the relevant statutory and case law governing the issues, it is hereby

**ORDERED** that defendants' motion to dismiss is **DENIED IN PART** with respect to plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 against individual defendants and the District of Columbia; and it is

**FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED IN PART** with respect to plaintiffs' claims of conspiracy pursuant to § 1985 against the District and individual defendants; and it is

**FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED IN PART** with respect to plaintiffs' claims of intentional torts against the District of Columbia and individual defendants in their official capacities; and it is

**FURTHER ORDERED** that defendants' motion to dismiss is **DENIED IN PART** with respect to plaintiffs' claims of

intentional torts against individual defendants in their personal capacities.