Standley **BRADY**, Plaintiff,

v.

Wilson **LIVINGOOD**, Sergeant at Arms, U.S. House of Representatives, the Office of the Sergeant at Arms, et al., Defendants.

No. 02–802 (RJL).

United States District Court, District of Columbia.

March 24, 2004.

Joseph D. Gebhardt, Charles W. Day, Jr., Gebhardt & Associates, LLP, Washington, DC, for Plaintiff.

Gloria Lett Ferguson, Kerry W. Kircher, Victoria Botvin, U.S. House of Representatives, Edith M. Shine, U.S. Attorney's Office, Washington, DC for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the motions to dismiss of defendant Office of the Sergeant at Arms of the U.S. House of Representatives ("Office of the Sergeant at Arms") and seven individual defendants who are current or former House employees, Wilson Livingood, Kerri L. Hanley, Donald T. Kellaher, Jeanne Mershon, Patrick Lanigan, Barbara J. Sullivan, and Anthony Griffith ("Individual House Defendants").[1] The Office of the Sergeant at Arms moves to dismiss Counts II and V of the plaintiff Standley Brady's Amended Complaint, which respectively allege unlawful employment discrimination and retaliation under the Congressional Accountability Act.[2] 2

1. In addition to claims against the Office of the Sergeant at Arms and the Individual House Defendants, the plaintiff's Amended Complaint also charges the United States with one count of intentional infliction of emotional distress (Count IV). On March 28, 2003, the plaintiff gave notice of dismissal without prejudice of this sole count against the United States. Accordingly, the motion to dismiss filed by the United States on February 24, 2003 is moot.

2. The Office of the Sergeant at Arms has filed two separate motions to dismiss in this case. The first motion to dismiss was filed on June 28, 2002 in response to the plaintiff's April 26, 2002 Complaint, which the plaintiff filed *pro se* and which only alleged claims against the Office of the Sergeant at Arms. The plaintiff subsequently amended the Complaint and added the United States and the seven Individual House Defendants as parties to the suit. The motion under consideration by the Court is the Office of the Sergeant at Arms' December 26, 2002 motion to dismiss the

U.S.C. §§ 1301–1438. This defendant also moves for dismissal of any claims brought by the plaintiff that occur outside of the 180–day statute of limitations for claims under the Congressional Accountability Act. In a separate motion, the Individual House Defendants move to dismiss Count III of the Amended Complaint, the sole count brought against these defendants, which seeks relief under 42 U.S.C. § 1985(3) for a civil conspiracy to violate federally guaranteed rights. For the following reasons, the Court GRANTS the Office of the Sergeant at Arms' motion. Furthermore, the Court GRANTS the Individual House Defendants' motion to dismiss Count III of the Amended Complaint.

### *Factual Background*

The plaintiff is an African American male who has been employed by the U.S. House of Representatives Office of Garages and Parking Security Department ("OG & PS") as a Garage and Parking Security Officer since 1982, initially with the Office of the Architect of the Capitol, and then with the defendant Office of the Sergeant at Arms. Although the plaintiff believes that he has maintained an excellent work record during his more than twenty years of employment with OG & PS, he claims that he "has been the target of ongoing discriminatory practices based on his race and retaliation as result of his speaking out against certain unlawful employment practices" by the Office of the Sergeant at Arms. Amend. Compl. ¶ 34. For instance, the plaintiff states that he has never received a permanent promotion or more than one pay bonus, while "white employees have advanced and receive an-nual pay bonuses at a higher rate" than plaintiff and other African Americans. *Id.* at ¶ 41. The plaintiff further alleges that he and other experienced, educated African Americans have been continually discriminated against and are unable to advance to the OG & PS managerial level. *Id.* at ¶ 42.

On or about April 12, 2000, the plaintiff received the temporary position of Assistant Shift Supervisor, which carried a one-year probationary period ending April 12, 2001. *Id.* at ¶ 21. On or about April 9, 2001, after returning from vacation time used to make a missionary visit to South Africa, the plaintiff learned that his supervisor, William Morris, who the plaintiff alleges was the only African American supervisor, had been forced to resign as a result of allegations by two white employees, Barbara J. Sullivan and Anthony W. Griffith. *Id.* at ¶ 22. On the same day, the plaintiff was informed by Jeanne Mershon, Deputy Director, and Don Kellaher, Assistant to the Sergeant at Arms, that he would not be promoted to the position formerly held by Morris. The plaintiff claims that Mershon and Kellaher told him that although he would have been next in line for the position, the Office of the Sergeant at Arms preferred a white male, Bill Lomax, over the plaintiff. *Id.* at ¶ 23. The plaintiff alleges that Mershon stated she felt more comfortable working with Lomax, a white male, than with the plaintiff, an African American employee. *Id.* According to the plaintiff, Lomax had "less than nine months on the job." *Id.* at ¶ 24.

The following day, April 10, 2001,[3] the new Acting Supervisor, Bill Lomax, alleg-

---

Amended Complaint. As the June 28, 2002 motion responds in significant part to claims that were subsequently revised and replead by the plaintiff in the Amended Complaint, the Court will treat the June 28, 2002 motion as superseded by the December 26, 2002 motion.

**3.** Although the plaintiff's Amended Complaint ¶ 25 states that this event occurred on "April 10, 2002," the context of this paragraph makes clear that the plaintiff intended the date to be April 10, 2001 and that April 10, 2002 is typographical error.

edly approached the plaintiff and spoke to him in a degrading and condescending fashion, as if the plaintiff was a "slave-servant" to Lomax. *Id.* at ¶ 25. The plaintiff was later summoned to the office of Deputy Director Mershon, and then to the office of Wilson Livingood, Sergeant at Arms. Deputy Sergeant at Arms Kerri Hanley and Don Kellaher told the plaintiff that the Sergeant at Arms had lost confidence in the plaintiff's ability to supervise and that as a result, the plaintiff would be demoted from his probationary term to a lower grade classification. *Id.* at ¶ 25. Hanley allegedly told the plaintiff that there had been investigations of the plaintiff's conduct based on comments from a private focus group of employees, who indicated that the plaintiff was not an effective supervisor. *Id.* at ¶ 26. The plaintiff was further informed that there was clear and convincing evidence that the plaintiff had sexually harassed two white employees.[4] *Id.* The plaintiff believes that the two employees who accused the plaintiff, Sullivan and Griffith, also made allegations against the plaintiff's former supervisor, William Morris. *Id.* at ¶ 28. The plaintiff denies that the sexual harassment took place. Moreover, he claims that even though he asked for a copy of any evidence against him, that Hanley and Kellaher denied the request, and subsequently indicated that his vacation to South Africa gave them the impression that he was running away from his guilt. *Id.* at ¶ 29. The plaintiff contends that his demotion resulted in a substantial loss of income, embarrassment, and a loss of reputation. *Id.* at ¶ 31.

The plaintiff also believes that the Office of the Sergeant at Arms has retaliated against him in other ways for his inquiries regarding a pattern of discrimination against African Americans. He claims that he has never received a permanent promotion or more than one bonus award, has been denied overtime assignments, and has been assigned to work locations that are detrimental to his health and allergies. *Id.* at ¶¶ 41, 43, 47. The plaintiff asserts that he was assigned to work posts that are "dilapidated, without electricity, infested with termites and mosquitoes" and that he was exposed to dust, water, and mildew, which caused him to develop "severe allergic reactions." *Id.* at ¶¶ 43, 45. In November 2001, he was rushed to the emergency room for an allergic reaction that now requires weekly inoculations. *Id.* at ¶ 45.

Based on these allegations, the plaintiff brings claims of unlawful employment discrimination based on race, retaliation, and hostile work environment against the Office of the Sergeant at Arms, and a claim of civil conspiracy against the seven Individual House Defendants. The plaintiff asserts that he has exhausted any administrative prerequisites for this action by completing counseling and mediation required by the Congressional Accountability Act, and has received notice of his right to proceed with further action. *Id.* at ¶ 11.

The Office of the Sergeant at Arms moves for dismissal of Counts II (race discrimination—disparate impact) and V (retaliation) for failure to state claims upon which relief can be granted, and for dismissal of claims outside of the 180–day statute of limitations of the Congressional Accountability Act. The Individual House Defendants move for dismissal of the conspiracy claim (Count III) for lack of sub-

---

4. The plaintiff is alleged to have approached an African American female employee and asked her "May I please use your restroom?", while grabbing his pants in the genital area. Amended Compl. at ¶ 29. The plaintiff maintains that the two white employees, Sullivan and Griffith, were sitting some distance away. *Id.*

ject matter jurisdiction and failure to state a claim upon which relief can be granted.

### Discussion

 The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir. 1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

### I. Claims against the Office of the Sergeant at Arms: Race Discrimination—Disparate Impact (Count II) and Retaliation (Count V)

In his Amended Complaint, the plaintiff brings four claims against the Office of the Sergeant at Arms under the Congressional Accountability Act, 2 U.S.C. §§ 1301–1438: race discrimination—disparate treatment (Count I), race discrimination—disparate impact (Count II), retaliation (Count V), and hostile work environment (Count VI). The Office of the Sergeant at Arms moves for dismissal of Counts II and V for failure to state a claim upon which relief can be granted, and also moves for dismissal of any claims occurring outside of the 180–day statute of limitations under the Congressional Accountability Act.

### A. The Congressional Accountability Act of 1995

The Congressional Accountability Act ("CAA") makes several anti-discrimination laws, such as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., applicable to the legislative branch of the federal government. 2 U.S.C. § 1302. Under the statutory framework of the CAA, federal courts only have jurisdiction over civil actions brought by a covered employee if that employee has completed mediation and counseling requirements under the statute. 2 U.S.C. §§ 1404, 1408. The covered employee must commence an action under the CAA by requesting counseling not later than 180 days after the alleged discriminatory action, 2 U.S.C. § 1402(a), and once the 30–day counseling period ends, the employee can then file a request for mediation with the Office of Compliance. 2 U.S.C. § 1403(a). A civil action may commenced only to seek redress for a violation for which the employee has completed both counseling and mediation. 2 U.S.C. § 1408(a).

### B. Race Discrimination—Disparate Impact

In Count II of the Amended Complaint, the plaintiff alleges that the "selection and interviewing process used by Defendant [Office of the Sergeant at Arms] for management positions consistently have had a disparate impact on African Americans." Amend. Compl. ¶ 61. The plaintiff claims that African Americans "were and continue to be regularly denied permanent advancement opportunities while white applicants and employees with less education, seniority, and experience are consistently selected for management positions." *Id.* at ¶ 62.

 To make out a *prima facie* case of disparate impact, the plaintiff must show that a facially neutral system of per-

sonnel practices has a disparate impact on African American employees. *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Harris v. Lyng,* 717 F.Supp. 870, 874 (D.D.C.1989). Under this basis of liability, an employment practice may be deemed unlawful even without evidence of the employer's subjective intent to discriminate, which would be required in a disparate treatment case. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 645, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), *superseded on other grounds by statute,* Civil Rights Act of 1991, Pub.L. No. 102–166, S 1765, 105 Stat. 1071 (1991).

■ The Office of the Sergeant at Arms contends, in essence, that the plaintiff's failure to allege any statistical disparities between similarly situated employees and its failure to allege any specific element of its employment practices that allegedly resulted in such disparities is fatal under Rule 12(b)(6). Office of the Sergeant at Arms Mot. to Dismiss, in Part, Plaintiff's First Amended Compl. ("OSA Mot. to Dismiss"), at 8–9. The Court agrees.

■ While the Supreme Court has held that a plaintiff's burden in establishing a *prima facie* case of disparate impact "goes beyond the need to show that there are statistical disparities in the employer's work force," *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), the D.C. Circuit has made it clear that the plaintiff need not even "make out a prima facie case of discrimination in his complaint" in order to survive a motion to dismiss, nor, for that matter, "match facts to every element of a legal theory." *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114–15 (D.C.Cir.2000). Common sense and fairness, nevertheless, dictate that a plaintiff, at a minimum, allege *some* statistical disparity, however elementary, in order for

the defense to have any sense of the nature and scope of the allegation the plaintiff is seeking to prove. *See Krodel v. Young,* 748 F.2d 701, 709 (D.C.Cir.1984) ("Statistical evidence is crucial in disparate impact cases, where plaintiffs need not prove discriminatory intent, but must show that specific employment practices 'select applicants . . . in a racial pattern significantly different from that of the pool of applicants.' "). Moreover, when such an omission is coupled, as it is here, with a failure to identify and allege any aspect of the employment practices that causes such disparities, the defendant has no clear sense of the plaintiff's theory of the disparate impact attributable to the selection process. Accordingly, the Court grants the defendant's motion under Rule 12(b)(6) with regard to the plaintiff's disparate impact claim in Count III of the Amended Complaint.

### C. Retaliation

■ The Office of the Sergeant at Arms also moves under Rule 12(b)(6) for dismissal of the plaintiff's claim of retaliation. To allege a claim of retaliation, the plaintiff must demonstrate that (1) he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the adverse action and the protected activity. *Forman v. Small,* 271 F.3d 285, 299 (D.C.Cir.2001); *Baker v. Library of Congress,* 260 F.Supp.2d 59, 67 (D.D.C.2003); *Powell v. WMATA,* 238 F.Supp.2d 160, 166 (D.D.C.2002). With regard to "protected activity," under § 2000e–3(a) of Title VII, an employer may not discriminate against an employee because he has opposed "any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceed-

ing, or hearing under this subchapter." 42 U.S.C. § 2000e–3.

■ The Office of the Sergeant at Arms bases its motion to dismiss on a perceived failure of the plaintiff to state facts demonstrating either "protected activity" or a causal connection between the alleged protected activity and any adverse action. OSA Mot. to Dismiss, at 14. Specifically, the defendant argues that even if the plaintiff had properly alleged that he engaged in conduct that constituted "protected activity" and that he nonetheless suffered an adverse action, he fails to allege that any management employee of the Office of the Sergeant at Arms knew of this protected activity and retaliated thereafter. *Id.* at 15; *see also Powell v. WMATA*, 238 F.Supp.2d at 166 ("The required causal link between the protected activity and the adverse action may be established by showing that the employer knew of the employee's protected activity and that the adverse action took place shortly after the employee engaged in that activity."). The Court agrees.

As previously noted, the D.C. Circuit has held that in a civil rights case the plaintiff need not put forth a *prima facie* case in his complaint. *Sparrow*, 216 F.3d at 1114–15. However, even though the plaintiff need not match facts to each element of a claim, the Supreme Court has held (and Federal Rule of Civil Procedure 8 requires), that the plaintiff give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests..." *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, the plaintiff fails to give the Office of the Sergeant at Arms adequate notice of the grounds upon which his retaliation claim rests. Even if the Court views the plaintiff's demotion, the accusations of sexual harassment, and the allegedly unhealthy work post assignments as "adverse action," the plaintiff puts forth no facts

regarding conduct that could be construed as "protected activity" or any causal or temporal connection between such activity and retaliatory action by the defendant. Instead, the plaintiff merely repeatedly asserts that the defendant has retaliated against him for "prior efforts to assert his civil rights and oppose discrimination." Amend. Compl. ¶¶ 77, 78, 79, 80, 81, 82. While the Court will construe a complaint liberally in favor of the plaintiff, it need not accept inferences that are unsupported by the facts. *Kowal*, 16 F.3d at 1276. The Court has no basis to infer that the Office of the Sergeant at Arms retaliated against unspecified events occurring at various times during the plaintiff's more than twenty years of employment. If the plaintiff is alleging that the defendant retaliated against his own actions, he should have more than a vague idea of which of his actions prompted the alleged retaliation. Accordingly, the plaintiff's claim for retaliation (Count V) is dismissed under Rule 12(b)(6).

### D. Statute of Limitations

■ In addition to the specific challenges made to Counts II and V of the Amended Complaint, the Office of the Sergeant at Arms also moves for dismissal of any claims based upon acts that occurred outside of the CAA's 180–day statute of limitations (*e.g.*, allegations of denial of promotions, denial of bonuses, denial of overtime assignments, and assignments to work posts detrimental to his health, Amend. Compl. ¶¶ 41, 43, 47, 58, 78, 79, 81 and 82). As previously noted, the CAA provides that a civil action may commence only to seek redress for a violation for which the employee has completed counseling and mediation, 2 U.S.C. §§ 1404, 1408, a process which must be initiated not later than 180 days after the alleged discriminatory action. 2 U.S.C. § 1402(a). Thus, claims for conduct occurring outside of this 180–day period are generally con-

sidered time-barred under the statutory scheme. Although some judges in this district have previously recognized an exception to this rule in civil rights cases if the plaintiff has demonstrated a "continuing violation," *Thompson v. Capitol Police Board,* 120 F.Supp.2d 78, 82–83 (D.D.C. 2000), *Albritton v. Kantor,* 944 F.Supp. 966, 971–72 (D.D.C.1996), the Supreme Court has subsequently held in the Title VII context that "discrete discriminatory acts," such as terminations and failure to promote, are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. *Nat'l Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Singletary v. District of Columbia,* 351 F.3d 519, 526 (D.C.Cir. 2003). The Supreme Court stated: "[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Morgan,* 536 U.S. at 108, 122 S.Ct. 2061 (citing *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)). Thus, each discrete discriminatory act starts a new clock for filing charges alleging that act. *Id.* at 113, 122 S.Ct. 2061. Notably, the Supreme Court recognized that hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115, 122 S.Ct. 2061. Accordingly, a plaintiff may bring such claims based in part on acts outside of the statutory period under certain circumstances. *Id.* at 117, 122 S.Ct. 2061.

█ The rationale and holding in *Morgan* are equally applicable to civil rights claims brought under the CAA, which incorporates the protections of Title VII and expressly provides that civil actions can only be brought for conduct within 180 days of an administrative charge. To hold otherwise would allow plaintiffs to circumvent the procedural requirements of the CAA. Accordingly, any claims in the Amended Complaint that are based on conduct occurring outside of the 180–day statute of limitations, *i.e.,* conduct occurring prior to April 8, 2001,[5] with the exception of the plaintiff's hostile work environment claim (Count VI), are time-barred and thus dismissed. With regard to the hostile work environment claim, however, so long as one or more acts contributing to the claim occurred within the statutory time period, the Court will consider the entire period of the hostile environment, even if some of the component acts fall outside of that statutory time period.[6] *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061.

## II. Claims against the Individual House Defendants: Civil Conspiracy under 42 U.S.C. § 1985(3)

█ The Individual House Defendants move for dismissal of Count III of the

---

**5.** Both parties agree that the plaintiff first sought counseling for the alleged discriminatory acts on October 5, 2001. Pl. Opp. to OSA Mot. to Dismiss, at 10; OSA Mot. to Dismiss, at 20–21.

**6.** The Office of the Sergeant at Arms strenuously asserts that the plaintiff should be barred from bringing even the hostile work environment claim based on acts occurring outside of the statutory period. OSA Reply to Pl. Opp., at 9–10. However, whether the alleged discriminatory acts plead by the plaintiff in support of this claim are sufficiently related to be considered part of a continuing violation is a disputed issue of fact not appropriately decided upon a motion to dismiss. Indeed, the Supreme Court has expressly acknowledged that actions creating a hostile work environment may "occur[ ] over a series of days or perhaps years..." *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061. Accordingly, the Court will not bar the plaintiff from basing his hostile work environment claim on conduct occurring outside the statutory period, provided the plaintiff can meet the requirements set forth in *Morgan.*

Amended Complaint, alleging a civil conspiracy to violate rights guaranteed under Civil Rights Act of 1871,[7] brought under 42 U.S.C. § 1985(3). § 1985(3) is provides in relevant part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages...

In *Great American Federal Savings & Loan Assoc. v. Novotny* (*"Novotny"*), the Supreme Court clarified that § 1985(3) provides no substantive rights itself, rather it "merely provides a remedy for a violation of the rights it designates." 442 U.S. 366, 373, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

The plaintiff alleges that the seven Individual House Defendants "conspired" to deprive him of the equal protection of the laws when they segregated him from his white co-workers, falsely charged him with sexual harassment, and deliberately assigned him to unhealthy working conditions because of his race. Amend. Compl. ¶ 64. The plaintiff has made it clear that he is not alleging a conspiracy in violation of Title VII or the CAA, but rather seeks to address "a purely private conspiracy to cause a deprivation of federally guaranteed rights." Pl. Opp. to Defs' Mot. to Dismiss, at 6. The Individual House Defendants move for dismissal of Count III under Rule 12(b)(6) on the grounds that the plaintiff has failed to state a claim of conspiracy.[8] The Court agrees.

---

**7.** The Civil Rights Act of 1871, also known as the Ku Klux Klan Act, was the predecessor to § 1983, and was enacted in response to "the reign of terror imposed by the Klan upon black citizens and their white sympathizers in the Southern states." *See Briscoe v. LaHue,* 460 U.S. 325, 337, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The statute provided federal remedies for civil and criminal conspiracies in violation of an individual's right to equal protection of the laws. *Id.* at 338, 103 S.Ct. 1108.

**8.** The Individual Defendants also claim that the Court lacks subject matter jurisdiction in light of the Supreme Court's decision in *Novotny,* which barred a claim for conspiracy based on a violation of the Title VII. Individual House Defs.' Mot. to Dismiss, at 3–4. The plaintiff in this case, however, explicitly states that his claim for conspiracy is *not* based on a

violation of Title VII or the CAA, but rather, as previously noted, alleges a violation of his "federally guaranteed" constitutional rights. Pl. Opp. to Defs' Mot. to Dismiss, at 6. Indeed, the Supreme Court in *Griffin v. Breckenridge* made it clear that federal courts may have subject matter jurisdiction for claims brought under § 1985(3) for purely private conspiracies in violation of constitutionally guaranteed rights, *provided* that there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also Novotny,* 442 U.S. at 379–380, 99 S.Ct. 2345 (Justice Powell, concurring). Thus, if this Court found that the plaintiff had sufficiently plead facts demonstrating a private conspiracy to violate his constitutionally guaranteed rights, motivated by racial or class-based animus, this Court under *Griffin*

A civil conspiracy is a " 'combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an *agreement* between the parties to inflict a wrong against or injury upon another,' and 'an overt act that results in that damage.' " *Graves v. United States*, 961 F.Supp. 314, 320 (D.D.C.1997) (emphasis added). A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.[9] *Graves*, 961 F.Supp. at 321 (dismissing claim where plaintiff merely alleged that his former employer "colluded" with the Department of Education to keep him underemployed, without putting forth "any facts showing the existence or establishment of an agreement"); *see also Estate of Phillips v. District of Columbia*, 257 F.Supp.2d 69, 83 (D.D.C. 2003) (dismissing claim where plaintiffs failed to specify that defendants how the defendants "acted in concert"); *Davey v. Tomlinson*, 627 F.Supp. 1458, 1462 (E.D.Mich.1986) (dismissing claim where plaintiff made no allegations of specific acts or the means by which defendants were alleged to have conspired, other than arguing "in conclusory fashion that defendants conspired to deprive him of his constitutional rights").

Here, the plaintiff merely alleges that the seven Individual House Defendants "agreed among themselves" to subject him to discriminatory acts. Amend Compl. ¶ 65. The plaintiff puts forth no facts suggesting that the defendants were acting in concert in furtherance of a shared goal of discriminating against him. Even if the Court accepts the facts put forth by the plaintiff as true (*e.g.*, that he was falsely charged with sexual harassment, demoted from his temporary position, and assigned to unhealthy working conditions) the Court still could not infer an *agreement* to discriminate against him by his supervisors. These facts, even in the light most favorable to the plaintiff, are not susceptible to being interpreted as a conspiracy by the seven Individual House Defendants. The sole group-like conduct the plaintiff alleges in his Amended Complaint is that two white employees accused him of sexual harassment and that two supervisors informed him that he had been demoted based on comments by his coworkers. Amend. Compl ¶¶ 26, 27. To hold that this conduct could suffice to sustain a conspiracy claim would, in effect, subject employers to liability any time supervisory action was taken by more than one individual. Accordingly, the Court dismisses Count III under Rule 12(b)(6).

### ORDER

For the reasons set forth above, it is this 24th day of March, 2004, hereby

**ORDERED** that the defendant Office of the Sergeant at Arms' Motion to Dismiss, in Part, Plaintiff's First Amended Complaint [# 23] is GRANTED; and it is further

**ORDERED** that Counts II and V of the Amended Complaint are dismissed, and

---

would have an adequate basis for subject matter jurisdiction for this action.

9. The defendants allude to a "heightened pleading requirement" in their motion to dismiss the conspiracy claim. Individual Defs.' Mot. to Dismiss, at 11. Although courts in this Circuit once applied a heightened pleading standard in certain civil rights cases involving municipal liability, see *Hobson v. Wilson*, 737 F.2d 1, 29–30 (D.C.Cir.1984), the Supreme Court subsequently held in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) that such a requirement was inconsistent with the Federal Rule of Civil Procedure Rule 8(a).

that any of the plaintiff's claims occurring prior to April 8, 2001, except with regard to Count VI of the Amended Complaint (hostile work environment), shall be dismissed; and it is further;

**ORDERED** that the defendant Office of the Sergeant at Arms' Motion to Dismiss [# 6] is **DENIED** as moot; and it is further

**ORDERED** that the Individual House Defendants' Motion to Dismiss [# 22] is **GRANTED,** and that Count III of the Amended Complaint is dismissed; and it is further

**ORDERED** that the United States' Motion to Dismiss [# 34] is **DENIED** as moot.